790 P.2d 526 (1989)
SOONER FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation, Plaintiff-Appellee,
v.
OKLAHOMA CENTRAL CREDIT UNION, a corporation, Defendant-Appellee, and
Mickey Leslie, Defendant-Appellant, and
Charles E. Bailey, Doris R. Bailey, Hoshall E. Thomas, Oleta I. Thomas, Board of County Commissioners of Tulsa County, Oklahoma, and John F. Cantrell, County Treasurer of Tulsa County, Oklahoma, Defendants.
No. 65823.
Supreme Court of Oklahoma.
November 7, 1989.
As Corrected November 13, 1989.
Rehearing Denied May 8, 1990.
Thomas H. Trower, Houston and Klein, Inc., Tulsa, for plaintiff-appellee.
Thomas M. Bingham, Lang, James & Bingham, Inc., Tulsa, for defendant-appellee.
Ernest A. Bedford, John J. Kocher, Eric W. Spooner, Bedford & Associates, Inc., Tulsa, for defendant-appellant.
*527 OPALA, Vice Chief Justice.
The dispositive issues are: [1] Can the right of redemption be effected after sheriff's sale but before judicial confirmation? [2] Did the record owner have the right to redeem? and if so, [3] Does the redemptive right's gratuitous transfer to the foreclosing mortgage lender give the lender an equity superior to that of the purchaser for value at a regular judicial sale? We answer the first and second questions in the affirmative and the third in the negative.

I

ANATOMY OF LITIGATION
Hoshall and Oleta Thomas [collectively called Thomas] executed on May 2, 1975 a promissory note to Sooner Federal Savings and Loan Association [Sooner] for the principal sum of $49,500. To secure the note, they executed a real estate mortgage covering the property which is the subject of this appeal. Four months later Thomas conveyed the property to Charles and Doris Bailey [collectively called Bailey]. In conjunction with the transfer of title, Bailey executed a loan transfer and agreed to assume the indebtedness due Sooner.
Bailey stopped making monthly installments on the note in September 1984. Sooner then declared the note in default (with an unpaid balance of $43,127.24) and commenced foreclosure proceedings against Thomas and Bailey on February 15, 1985. Sooner named Oklahoma Central Credit Union [Credit Union] a party defendant because it had acquired title to the property by a February 16, 1984 sheriff's deed.[1] John F. Cantrell, Tulsa County Treasurer [Treasurer], and Board of County Commissioners [Board] were also named defendants because of possible tax liens against the property. Sooner sought a judicial determination that its interest in the property stands superior to that of the defendants.
*528 Bailey and Thomas did not enter an appearance, answer or otherwise plead to the petition. The Board filed an answer, disclaiming any interest in the property but seeking recovery of costs expended in the action. The Treasurer also answered, asserting that delinquent ad valorem taxes in the amount of $416 constituted a lien on the property and requesting recovery of costs against Sooner. Credit Union entered an appearance and filed a disclaimer of interest in the real property.

The Trial Court's Foreclosure Decision
The trial court found that (1) Thomas and Bailey[2] owed $43,127.24 on the note and mortgage together with interest, attorney's fees and costs for abstracting, mortgage cancellation insurance, ad valorem taxes and the costs of the action; (2) Sooner held a first and prior lien upon the real estate and premises described in the petition by virtue of its mortgage as security for the indebtedness, including interest, attorney's fees and costs and (3) the Treasurer held a lien on the property in the sum of $416, together with penalties and interest, for personal property taxes levied against Bailey, subject only to Sooner's first mortgage interest.
The trial court did not make a separate finding as to Credit Union's interest; rather it rendered a single judgment in rem for Sooner against Credit Union, Thomas and Bailey. The amount of the adjudicated balance due on the mortgage shown in the journal entry is identical to that found to be due Sooner from Thomas and Bailey. The property was ordered sold at sheriff's sale.

The Sheriff's Sale
A public sale took place July 23, 1985, at which Mickey Leslie [Purchaser] made the highest bid of $10,000. On the same day Credit Union filed a motion to set aside the sheriff's sale, alleging that it had tendered to Sooner "full payment of its judgment" and that the tender had been accepted contingent upon the court's vacation of the sheriff's sale. At the confirmation hearing the trial court found that Credit Union had "effected a redemption of the property" from the obligation owed to Sooner and set the sale aside.[3]
The trial court denied the purchaser's new trial motion but ordered the court clerk to reimburse to him the amount paid in on the bid. Sooner was held responsible for expenses in connection with setting aside the sale and was directed to "effectuate the redemption by Credit Union".[4] The purchaser appealed and the Court of Appeals reversed the trial court's postdecree order, holding that the right of redemption stands extinguished by force of law at the time the postdecree sale of property is effected. It remanded the cause with instructions to confirm the sale and to establish legal title in the purchaser.
We granted certiorari and now reverse the trial court's postdecree order.

II

RIGHT OF REDEMPTION CAN BE EFFECTED BEFORE CONFIRMATION
The purchaser contends the trial court erred in permitting Credit Union to exercise its right of redemption because *529 the redemption was exercised after he sought confirmation of the sale.
According to our statutory law, "[e]very person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."[5] The redemptive right is not extinguished at the time of sale but rather when the order of sale is confirmed.[6]
Generally, the equitable right of redemption belongs to one who has an interest in the premises that would be lost on foreclosure or to one who owns the mortgagor's equity of redemption or any subsisting interest therein by privity of title acquired by purchase, inheritance or otherwise.[7] A borrower or any other person (i.e., subordinate lender, owner) having an interest subject to a lien has a right of redemption that is not extinguished at the time of sale but extends until the order of sale is confirmed.[8] This is so because by statute a judicial sale on foreclosure is neither conclusive nor binding in the sense of transferring legal title to the purchaser until it is effectively confirmed.[9] We acknowledge that there are early post-statehood cases which seem to hold to the contrary.[10] Insofar as these authorities are in discord with today's pronouncement, they are to be viewed as overruled by our more recent decisions.[11]
We hold that Credit Union could effect its right of redemption at any time before the sale was confirmed.

III

CREDIT UNION'S RIGHT TO REDEEM
Oklahoma's statutory law recognizes and confers a right to redeem as inherent in every mortgage.[12] Any person having an interest in mortgaged real estate may redeem from a mortgage or from a deed absolute on its face[13] which is taken as security for debt.[14]
In Oklahoma, where the common-law theory of mortgages stands statutorily abrogated and replaced with an equitable theory, a right to redeem means that upon discharge of the debt within the maximum permissible time, the foreclosed borrower is entitled to have the mortgaged premises released from the lien and his entire estate restored to the extent he would have had if the mortgage transaction had never taken place.[15]
We accordingly hold that Credit Union, the purchaser of the property in question at the prior judicial sale,[16] had a right to redeem from Sooner's mortgage.

*530 IV

INEFFECTIVENESS OF CREDIT UNION'S TRANSFER TO SOONER AS AGAINST THE PRIOR PURCHASER FOR VALUE AT A REGULAR JUDICIAL SALE
As a subordinate mortgagee, Credit Union had taken title to the property in question subject to Sooner's first mortgage and without assuming it. It hence incurred no personal obligation. One who purchases another person's equity by buying the land subject to a mortgage, does not become personally liable for the mortgage debt.[17] The liability of Credit Union to Sooner was solely in rem. A judgment in rem creates no personal liability but operates only on the property that is the subject of litigation.[18]
Personal liability for the mortgage debt in suit was imposable only on Bailey as principal obligor and on Thomas as Bailey's surety. A purchaser who assumes the mortgage obligation becomes the principal debtor, while the original mortgagor then occupies the position of a surety.[19]
Sooner's "cancellation" of Credit Union's "mortgage debt" was nothing more than an idle act in an illusory transaction. Credit Union bore no in personam liability on any mortgage to Sooner. It was not amenable to a deficiency judgment.[20] Sooner thus parted with no consideration, suffered no detriment and conferred no benefit upon Credit Union. In short, by its acquisition of Credit Union's redemptive rights Sooner became a nudum pactum transferee. Nudum pactum is a gratuitous promise  one unsupported by any sufficient legal consideration.[21] Credit Union's gratuitous promise failed to give Sooner a position different from that it had occupied as a foreclosing lender.

V

THE EQUITY OF A PURCHASER FOR VALUE AT A REGULAR JUDICIAL SALE IS SUPERIOR TO THE EQUITY OF A GRATUITOUS TRANSFEREE
The equity of a prior purchaser for value must be viewed as superior to that of a foreclosing lender who, like Sooner here, stands as a gratuitous transferee (i.e. one without consideration) from a holder of redemptive rights.
The postsale right to redeem before confirmation is carved out by principles of public policy to afford a foreclosed borrower the best opportunity to revest title in himself and save the estate from foreclosure.[22] *531 To give preference to a foreclosing lender, qua gratuitous transferee of an equity of redemption, over a purchaser for value at a regular judicial sale would contravene the law's policy if the holder of redemptive right did not himself benefit from the transfer.
The policy of redemption was not designed to shield foreclosing lenders or to invalidate sales at the whim of foreclosing lenders acquiring redemptive interests by gratuitous transfers. A foreclosed borrower's right to redeem upon his default is equitable; and when its assertion is pressed against a superior equity of another, it would plainly offend the notions of fairness if the court did not withhold the relief sought.[23]
When considering a plea to set aside a sale, the court must weigh the purchaser's equities against those of the vacation movant.[24] The attempted transfer of Credit Union's redemptive right to Sooner sans consideration was, at best, a transfer contingent upon the court's vacation of the sale. This contingency agreement to secure judicial invalidation of the sale is insufficient as a basis for giving Sooner an equity superior to that acquired by the purchaser at a regular foreclosure sale.[25]

The Court's Pronouncement
In sum, we hold today that (a) equity of redemption is transferable and is not extinguished until foreclosure sale is confirmed; and (b) a foreclosing lender who claims the right to redeem through a gratuitous and contingent promise given by one holding redemption rights, has an equity inferior to that of the purchaser at a regular foreclosure sale.[26]
CERTIORARI WAS PREVIOUSLY GRANTED; THE COURT OF APPEALS' OPINION IS VACATED AND THE TRIAL COURT'S POSTDECREE ORDER DENYING CONFIRMATION IS REVERSED AND THE CAUSE IS REMANDED WITH DIRECTIONS TO CONFIRM THE SALE.
HARGRAVE, C.J., and LAVENDER, DOOLIN and SUMMERS, JJ., concur.
SIMMS and KAUGER, JJ., concur in part and dissent in part.
HODGES and ALMA WILSON, JJ., dissent.
*532 ALMA WILSON, Justice, dissenting:
On September 2, 1980, Oklahoma Central Credit Union (hereinafter "the Credit Union") filed suit to foreclose against Charles and Doris Bailey. Also named as defendant was Sooner Federal Savings & Loan Association (hereinafter "Sooner"). The petition averred that Sooner was the owner of a first and prior mortgage and that the Credit Union sought foreclosure of its mortgage indebtedness subject to the mortgage of Sooner. The Credit Union received a judgment against the Baileys and became record holder of title to the property at issue by purchase at sheriff's sale.
On February 15, 1985, Sooner filed its foreclosure action against the Baileys, prior mortgagors from whom the Baileys had assumed, the Credit Union, Board of County Commissioners, and the Treasurer of Tulsa County. The action proceeded to a judgment in favor of Sooner. That June 10, 1985, judgment stated:
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Plaintiff, Sooner Federal Savings and Loan Association, a corporation, have and recover judgment in rem against the Defendants, Charles E. Bailey, Doris R. Bailey, Hoshall E. Thomas, Oleta I. Thomas, and Oklahoma Central Credit Union for the sum of $43,127.24, with interest thereon at 9% per annum from September 1, 1984, until paid, $4,312.00 attorney fees, $405.00 abstracting, $40.00 for maintenance, $60.99 for mortgage cancellation insurance, $58.00 for hazard insurance, and $460.00 for 1984 ad valorem taxes, together with all costs of this action, for all of which let execution issue.
At the subsequent sheriff's sale, a third party, Mickey Leslie, purchased the property for $10,000. The Credit Union filed a motion on the same day to set aside the sheriff's sale. In the trial court's order of December 19, 1985, the court refused to confirm the sale and found:
that the parties have stipulated that the subject foreclosure sale of July 23, 1985, was regular and proper in all respects and complied with Oklahoma law with respect to such foreclosure sales. Further, the Court finds that the parties have stipulated that the proposed redemption by Oklahoma Central Credit Union (hereinafter "Union") is in accordance with an oral agreement between Union and Sooner Federal Savings and Loan Association (hereinafter "Sooner") that upon the setting aside of the subject Sheriff's Sale, that Union will convey by Quit-Claim Deed to Sooner, any and all of Union's right, title and interest in and to the subject real estate and that in consideration thereof, Sooner has agreed to accept such conveyance as full satisfaction of the debt owed to it by Union and to release the judgment of Sooner against Union.
The third party, Mickey Leslie, appealed that order.

I.
A successful bidder at a sheriff's sale acquires equitable title and certain other inchoate rights of ownership in the property put to bid. Atlantic Richfield Co. v. State, 659 P.2d 930, 933 (Okla. 1983). That purchaser, or his assignee, acquires such an interest in the property as to entitle him to "make a motion" for judicial confirmation of the sale. Payne v. Long-Bell Lumber Co., 9 Okl. 683, 60 P. 235, 236 (1900). The sale must be confirmed by a court of competent jurisdiction to perfect the inchoate and equitable title acquired by the purchaser. Harris v. Stevens, 84 Okl. 196, 202 P. 1024, 1026 (1921). Until this is accomplished, the imperfect title of the purchaser remains conditional. Payne, 60 P. at 237. Filing a motion to confirm does not perfect the title. The ratification of the sale by the court accomplishes that result.
The appellant proposes that a trial court is without any authority to deny a motion to confirm a sale unless statutory or technical error is involved in the sale. He cites Payne and Harris to support his proposition. Those cases do not limit a trial court's authority to verifying that the correct procedural steps were taken. Although a judgment debtor has no absolute right to redeem after a sheriff's sale of *533 mortgaged property, the trial court may consider extrinsic circumstances of equity and refuse to confirm the sale. Payne, 60 P. at 239. The statutes governing the sheriff's sale are applicable to the procedure followed by the officer conducting the sale. They do not limit the power of the court in refusing to confirm or in setting aside a sale where equitable circumstances so direct. Hays v. Burton, 321 P.2d 701 (Okla. 1958). Insofar as Payne and Harris may be misconstrued to impermissibly limit the equity power of a trial court in refusing to confirm or in setting aside a sale, those decisions have been implicitly overruled in the majority opinion. I would explicitly overrule these two cases.

II.
One who holds a lien inferior to another on the same property has a right to redeem the property in the same manner as its owner might from the superior lien. 42 O.S. 1981, § 19. Clearly the Credit Union had the right to redeem the property. The appellant contends that the trial court erred in permitting the Credit Union to exercise this right of redemption because the Credit Union had previously attempted to disclaim interest in the property. The basis of the appellant's contention of error is without merit because the trial court did not effectuate the disclaimer. Subsequent to the filing of the disclaimer, and in the absence of the Credit Union, the trial court entered judgment on the mortgage against the Credit Union, along with the Baileys and the Thomases, in the amount of $43,127.24, plus interest, attorneys' fees and costs. The interest of the Credit Union was thereby judicially determined to be that of a judgment debtor as to the mortgaged property securing the lien, contrary to the Credit Union's unsuccessful attempt to disclaim any interest in the property. In effect, the trial court rendered the Credit Union's attempted disclaimer a nullity.

III.
Finally, the appellant contends that the Credit Union did not redeem as required by statute. With this allegation the majority agrees. It holds that the transfer from the Credit Union to Sooner was without consideration and therefore was an ineffective attempt at redemption of the property. It holds that an ineffective attempt at redemption does not defeat the rights of a purchaser at a sheriff's sale. However, the very document from which this appeal is based states that the parties stipulated that the transfer was made with consideration. Stipulations bind parties at the appellate level. Elliott v. Hunt, 197 Okl. 464, 172 P.2d 804 (1946); Grand River Dam Authority v. Thompson, 187 Okl. 129, 101 P.2d 843 (1940); St. George State Bank of St. George, Kansas v. Marshall, 186 Okl. 500, 100 P.2d 432 (1940); State ex rel. Oklahoma Tax Commission v. Fugatt, 184 Okl. 162, 86 P.2d 338 (1939); Morton v. Central Nat'l Bank of Okmulgee, 171 Okl. 494, 43 P.2d 394 (1935); and Brooks v. Tyner, 38 Okl. 271, 132 P. 683 (1913).
The order of December 19, 1985, as quoted above states twice that the parties stipulate that the proposed redemption by the Credit Union was to convey all of its right, title and interest in the subject real estate "and that in consideration thereof," Sooner would accept the conveyance as full satisfaction of the debt owed it by the Credit Union and release the judgment against the Credit Union. That stipulation is ignored by the majority.
Pursuant to 42 O.S. 1981 § 18 "[e]very person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed." Section 19, cited above, provides that an inferior lien holder has the right to redeem the property "in the same manner as its owner might" from the superior lien. Redemption is made "by performing, or offering to perform, the act for the performance of which it is a security, and paying, or offering to pay, the damages, if any, to which the holder of the lien is entitled for delay." 42 O.S. 1981 § 20. Not only did the Credit Union have an inferior lien on the subject property, it became the record holder of title in the property at a previous sheriff's sale. Redemption was *534 performed by the offer of Credit Union to convey to Sooner title to the realty and Sooner's agreement to accept the conveyance in full satisfaction and release of judgment against the Credit Union. Thus, the Credit Union, the judgment debtor, made an offer to perform the act of satisfaction of the mortgage and judgment by its tender of a deed to the property and Sooner, the judgment creditor, agreed to accept the deed in full satisfaction of the judgment and mortgage. The fact that Sooner's judgment against the Credit Union was in rem is not determinative. The legislated right of redemption is not contingent upon adequacy of consideration.
Though the trial court may not arbitrarily refuse to confirm a valid sheriff's sale, it does have the discretionary power to set aside a sale in proper pleadings on equitable grounds. Hays v. Burton, 321 P.2d 701 (Okla. 1958). I would hold that the confirming or setting aside of a judicial' sale falls squarely within the equitable and discretionary powers of the trial court. Absent an affirmative showing of abuse of discretion this Court must affirm.
If the majority opinion stands for the rule that a record owner and judgment debtor having right of redemption cannot transfer such right for consideration (even to the mortgagee) it is in error.
If the majority opinion stands for the rule that a judgment debtor and record owner's right of redemption was transferred without consideration, it is not supported by the record, and the appealed order. Having decided that Lincoln Mortg. Investors v. Cook, 659 P.2d 925 (Okla. 1982), not Payne v. Long-Bell Lumber Co., 9 Okl. 683, 60 P. 235 (1900), is the rule in Oklahoma, this Court may not ignore nor misapply the special facts of this case. The ultimate issue is whether the trial court abused its discretion. It is clear it did not under these peculiar facts.
The irony under these facts is that both the judgment debtor and the judgment creditor desire and agree to allow the judgment debtor to redeem. The law allows such a redemption. But this Court is proceeding to hold in favor of a third party. Is the purpose of a sheriff's sale to benefit some third party? Clearly not. A sheriff's sale gives some recovery to the judgment creditor and some mitigation of the breach of contract for the benefit of the judgment debtor. The sale is not for the benefit of the third party who, generally speaking, receives a property at a fraction of its value.
As this Court has decided that redemption can occur up until confirmation, what legal wrong can the third party claim? He may only urge disappointment at losing a good value at someone else's expense. Accordingly, I must dissent to this Court's reversal of the trial court judgment.
NOTES
[1] On September 2, 1980 Credit Union commenced a foreclosure suit in the District Court, Tulsa County, Case No. 3-80-2004. The defendants were Bailey and Sooner. Credit Union stated in its petition that Sooner "... is the owner of a first and prior mortgage ... and plaintiff seeks foreclosure of its mortgage indebtedness subject to the mortgage of defendant, Sooner ...." [Emphasis added.] Credit Union received a judgment against Bailey and eventually became record holder of title to the property (which is in contest in the present postdecree proceeding) by its purchase at a sheriff's sale. In their briefs to us the parties agreed to these extra-record facts. See statement in the brief-in-chief, p. 1, of appellant Mickey Leslie which is admitted by appellees Sooner and Credit Union in their answer brief, p. 1, herein. Admissions in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. Depuy v. Hoeme, Okl., 775 P.2d 1339, 1341, n. 13 [1989]; Reeves v. Agee, Okl., 769 P.2d 745, 753 [1989]; Womack v. City of Oklahoma City, Okl., 726 P.2d 1178, 1181 [1986]; Timmons v. Royal Globe, Okl., 713 P.2d 589, 592, n. 10 [1986]; Norris v. Norris, Okl., 695 P.2d 506, 507 [1984]; Greenwood v. Lyles & Buckner, Inc., Okl., 329 P.2d 1063, 1067 [1958]; Ramer v. State, Okl., 302 P.2d 139, 140 [1956].
[2] Bailey was the assuming grantee from Thomas, the original debtor; on his assumption of Thomas' mortgage obligation, Bailey became the principal mortgage debtor while Thomas then moved to the position of surety for Bailey's secured obligation. See discussion in Part IV of the opinion and the authorities for the parties' status infra note 19.
[3] There was here no stipulation characterizing the transfer of equity of redemption from Credit Union to Sooner as one effected upon an adequate, valid and sufficient legal consideration. Quite to the contrary, that issue was vigorously contested below and in the appellate process.
[4] Redemption is a "right a mortgagor is given to redeem his property from default." Black's Law Dictionary, p. 485 [5th Ed. 1979] (equity of redemption). To redeem is "to buy back." "The realization of a right to have the title of property restored free and clear of the mortgage; performance of the mortgage obligation being essential for that purpose." Black's supra at 1149 (redemption); Coursey v. Fairchild, infra note 15.
[5] 42 O.S. 1981 § 18.
[6] Lincoln Mortg. Investors v. Cook, Okl., 659 P.2d 925, 928 [1982]; State ex rel. Com'rs of Land Office v. Warden, infra note 11.
[7] McCullough v. McCullough, 247 Ala. 286, 24 So.2d 123 [1945]; see also Baker v. Boyd, 196 Ark. 563, 119 S.W.2d 524, 526 [1938]; Robbins v. Blanc, 105 Fla. 625, 142 So. 223, 225 [1932]; Baker, Lyons & Co. v. Eliasberg & Bros. Mercantile Co., 201 Ala. 591, 79 So. 13, 14-15 [1918].
[8] Lincoln Mortg. Investors v. Cook, supra note 6; State ex rel. Com'rs of Land Office v. Warden, infra note 11.
[9] 12 O.S. 1981 § 765.
[10] See, e.g., Payne v. Long-Bell Lumber Co., 9 Okl. 683, 60 P. 235 [1900]; Harris v. Stevens, 84 Okl. 196, 202 P. 1024 [1921].
[11] Lincoln Mortg. Investors v. Cook, supra note 6; State ex rel. Com'rs of Land Office v. Warden, 197 Okl. 97, 168 P.2d 1010, 1014 [1946]; see also Nowata Land and Cattle Company, Inc. v. Lloyd Willis, unpublished opinion in No. 60,509 [May 28, 1984].
[12] See the text at supra note 5 for the pertinent terms of 42 O.S. 1981 § 18; see also Coursey v. Fairchild, infra note 15 at 38; Moore v. Beverlin, 186 Okl. 620, 99 P.2d 886, 888 [1939].
[13] The term "deed absolute" means a "[d]eed which conveys absolute title as contrasted with mortgage deed which is defeasible on fulfillment of mortgage conditions." Black's Law Dictionary, p. 373 [5th Ed. 1979]. See also Mills v. Reneau, infra note 14 at 517 (syllabus ¶ 1).
[14] Mills v. Reneau, Okl., 411 P.2d 516, 517 (syllabus ¶ 1) [1965].
[15] Lincoln Mortg. Investors v. Cook, supra note 6; Coursey v. Fairchild, Okl., 436 P.2d 35, 38 [1967].
[16] See supra note 1.
[17] Continental Life Ins. Co. v. Phillips, 170 Okl. 34, 38 P.2d 564, 565 [1934]; Parlette v. Equitable Farm Mortg. Co., 165 Okl. 155, 25 P.2d 300, 301 [1933]; Johnson v. Davis, 146 Okl. 170, 293 P. 197, 198 [1930]; Bailey v. State, 72 Okl. 203, 179 P. 615, 616 [1919]; Van Eman v. Mosing, 36 Okl. 555, 129 P. 2, 3 [1912].
[18] Eureka Bldg. & Loan Ass'n v. Shultz, 139 Kan. 435, 32 P.2d 477, 480 [1934]. As a general rule, a decree of foreclosure is in rem, its object being the satisfaction of a specific lien by the application of particular property or its proceeds to the payment of the debt, and it is not a personal judgment against any other defendant, since the rendition of a personal judgment on the debt secured by the mortgage is unnecessary in order to enforce the security. State Bank of Downs v. Criswell, 155 Kan. 314, 124 P.2d 500, 503 [1942]; Donaldson v. Henry, 61 Idaho 634, 105 P.2d 731, 734 [1940]; Perkins v. Bundy, 42 Idaho 560, 247 P. 751, 752 [1926].
[19] Scott v. Norris, 62 Okl. 292, 162 P. 1085, 1087 [1917]; Winans v. Hare, 46 Okl. 741, 148 P. 1052, 1053 [1915]; Harden v. American-First Nat. Bank, 154 Okl. 11, 6 P.2d 1060, 1062 [1932]; Sawyer v. Bahnsen, 102 Okl. 41, 226 P. 344 (syllabus ¶ 2) [1924]; Stalcup v. Easterly, Okl., 351 P.2d 735, 738 [1960].
[20] See Oklahoma's deficiency judgment statute, 12 O.S. 1981 § 686. In an action on a note and to foreclose a mortgage, a personal judgment cannot be rendered against a defendant who neither signed the note, assumed payment of the mortgage nor otherwise became liable thereon. See Lewis v. Couch, 179 Okl. 418, 65 P.2d 988 (syllabus ¶ 2) [1937].
[21] Grimes v. Baker, 133 Neb. 517, 275 N.W. 860, 863 [1937]; Virtue v. Stanley, 87 Wash. 167, 151 P. 270, 272 [1915]; Justice v. Lang, 42 N.Y. 493, 1 Am.Rep. 576, 578 [1870]; Wardell v. Williams, 62 Mich. 50, 28 N.W. 796, 800 [1886]; Davis v. Morgan, 117 Ga. 504, 43 S.E. 732, 733 [1903]; Stonestreet v. Southern Oil Co., 226 N.C. 261, 37 S.E.2d 676, 677 [1946]; see also Black's Law Dictionary, p. 961 [5th Ed. 1979].
[22] See the following cases for the general policy of redemption, Lincoln Mortg. Investors v. Cook, supra note 6 at 928; Coursey v. Fairchild, supra note 15 at 38; McCall v. Carlson, 172 P.2d 171, 179 [Nev. 1946]; Crews v. Crews, 192 N.C. 679, 135 S.E. 784, 787 [1926]; see also Turner, The Equity of Redemption, [1931], for a detailed historical analysis of the equity of redemption.
[23] See Kenyon v. Shreck, 52 Ill. 382-383 [1869]. In Mulvey v. Gibbons, 87 Ill. 367, 369, 383 [1877], the court cited Kenyon, supra, and stated that "... the equity of redemption will not be allowed to be asserted against a superior equity, nor will it be allowed under circumstances which show it to be inequitable."
[24] In determining the propriety of confirming a real estate mortgage foreclosure sale the court may examine into equities of the parties associated with facts, circumstances and transactions not involved in the judgment. See State v. Landess, Okl., 293 P.2d 574 (syllabus 2) [1956]; State ex rel. Com'rs of Land Office v. Schneider, 198 Okl. 697, 181 P.2d 975, 977 [1947]; State v. Loughridge, Okl., 262 P.2d 162, 165-166 (syllabus ¶ 2) [1953].
[25] Jackson v. Carroll, 86 Okl. 230, 207 P. 735, 743 [1922]. For a discussion of superior and equal equities see Pomeroy's Equity Jurisprudence, §§ 683-685, pgs. 944-948 [5th ed. 1941]. There it is stated that a valuable consideration is a most important element of an equitable interest and is superior to the equity arising from a mere voluntary transfer, a mere gift or from a judgment lien. "[W]hile the interest acquired by a transfer without consideration, by a voluntary gift, may be protected if it does not interfere with third persons, yet the voluntary transferee or donee can only receive whatever interest the donor was actually entitled in conscience and good faith to bestow; he never obtains even as against the donor, and much less as against third persons dealing with the donor in respect to the same thing, any paramount right of his own. The consideration on the one side, and the absence of it on the other, lie at the very bottom of the equitable theory concerning actual rights... ." [Emphasis added.] Pomeroy, supra, § 685 at 948.
[26] The foreclosing lender's interest as a transferee of Credit Union's right to redeem is cognizable in equity. Moore v. Beverlin, supra note 12, 99 P.2d at 888. Before a judicial sale's confirmation the purchaser's title to the property is viewed as equitable only. Big Four Petroleum Co. v. Quirk, Okl., 755 P.2d 632, 634 [1988]; Atlantic Richfield Co. v. State, Okl., 659 P.2d 930, 933 [1983].